Good morning, Your Honors. May it please the Court, Albert Chao on behalf of the petitioner, Jie Zhang. Your Honors, this is an asylum case, and in this case, the petitioner was found to be credible. Therefore, the issues before this Court are two. One is whether or not the petitioner suffered any past persecution, and two, whether or not this persecution was on account of political opinion. And we believe that in this case, the answers to both are yes. In this case, there was a recent case, Song v. Sessions, which is very similar to this case, in which both petitioners were protesting against the government action, in this case, a forced relocation or a forced demolition. And both of them were arrested because of their protest. And so we believe that this act of protesting against the government action is a political opinion. Let's assume that after Song, that I'm willing to concede that, or at least willing to think that that needs to go back to the BIA. The alternate in the BIA's decision is that what your client suffered didn't amount to past persecution. So again, we deem him credible, but all in all, doesn't amount to past persecution. Yes, Your Honor, and I know the Board cited the Gu case for that, but we believe that this case is distinguishable from Gu. First of all, his detention was more than twice what Gu's detention was. Gu had a three-day detention, whereas in this case, the petitioner had a seven-day. But it's a one-time thing. I mean, we don't doubt. Again, we deem him credible. This is extraordinarily unpleasant. It was apparently related to his activities. But he traveled on his own passport. He was allowed out of the country. So he would travel, seem to travel freely in China. There's some question as to whether he was really, whether they were watching carefully to make sure they fulfilled the matter, the probation, the terms of his probation. So where's the evidence of persecution, other than this? I mean, he's got the one-time disturbing the piece. Yes, well, you know, we believe that cumulatively that there was past persecution, even if this particular single incident was not persecution. The petitioner also credibly testified about two forced abortions upon his wife. Now, again, the forced abortions, again, unto itself may not be persecution, but we believe that cumulatively, if you take into account this single incident plus the two... You don't have any evidence, do you, that the officials who were enforcing the one-child policy and the officials who were enforcing the no protest in front of the mayor's office were the same officials? No, they're not the same officials, Your Honor, but we're talking about government officials in both instances. Also, even if he can't prove past persecution, he presumably could try and demonstrate a well-founded fear of future persecution, which would take into account what had happened to him with regard to the eminent domain question, even if that wasn't persecution. That's correct, Your Honor, because he was, even after he was released from detention, he was forced to report to the government. So that showed that they continued to have an interest in him. They continued to want to keep... I mean, he'd have a hard road to home, I presume, because he'd have to demonstrate that even though they didn't persecute him in the past, what they would do to him in the future would be persecution. But since the BIA and the IJ were premised on the fact that that wasn't a cognizable ground at all, they never really got to that inquiry. That's correct, and that's why in this case we're arguing that there was past persecution because therefore there would be a presumption of a well-founded fear. But even if there... My point is only that even if there weren't, there would still be something to litigate if they came to a different conclusion as to the nexus question. Yes, Your Honor, I agree with that. I do believe that there was a well-founded fear in this case. I do believe that subjectively that he does have a well-founded fear of return and that objectively he does as well, considering, again, that the government continued to show an interest in him even after they released him. What interest did they show in him after he left the country in December of 2007? Well, I don't believe that they... I don't know if they showed an interest in him after he left the country, but while... Again, after he was released from detention they continued to show an interest in him by requiring him to report. That could just be the terms of disturbing the peace. I mean, so let's characterize this just a little differently and say, look, they overreacted, but this was just a disturbing the peace. They had some terms of probation. It's not clear that they were enforced. He leaves the country. Why 11 years later would they have any interest in somebody who had a disturbing the peace violation? Well, Your Honor, in answer to that, under a well-founded fear, the standard that is set steadily to the INS is that there only needs to be a 1 in 10 chance for a well-founded fear. And so the point you're bringing up is 11 years later, I understand what the point is, but the point is that in terms of a 1 in 10 chance, we believe that that is a possibility considering what had happened to him previously, considering that they did show an interest in him. And as you said, even if this was some sort of probation, I guess you could say that he violated that probation by leaving the country, by not continuing to report as he was required to do. So I believe that does meet the standard of a 1 in 10. Where do you get the 1 in 10 chance? I'm sorry? Where do you get the 1 in 10 chance? INS Vistevich and also Cardoza Fonseca. I thought that dealt with Catt. No, that's for asylum, right? That's for a well-founded fear of future persecution. And withholding is more likely than not. Correct. Standard reserve for asylum and withholding. Right. But either way, it's only required a 1 in 10 chance for a well-founded fear, and we believe that that would be a 1 in 10 chance, even if we're only talking about well-founded fear and we're not talking about past persecution. But as I said, in this instance, we do believe that there is past persecution. As I said, I know the board stated in its decision that they did consider everything in the aggregate, but they kind of took them separately. They said in this case, the single incident with the mayor's office, that was not past persecution. That's why I asked whether there was any commonality of officials enforcing these two different problems. Right. The commonality is that they're both government officials either way. Sure. But as you evaluate the possibility of future persecution, you have to think about two different groups, one that might come after him because he and his wife were in violation of the one-child policy, and that was enforced apparently in a different province, and they never had any contact with him. He wasn't around. That's true. There's a lot of steps there that they're going to do something to him on the basis of the one-child policy. I mean, what's done is done, not even clear that she's still of childbearing age. Yes, and in terms of well-founded fear, Your Honor, I believe you'd be correct if we're talking about that. That would certainly, for a well-founded fear, that would only be the incident in terms of the political opinion matter. But if we're talking about past persecution, it's what persecution happened to him, and both of those instances were government officials persecuting him. Are there any – does he have any – if he were sent back to China, does he have any particular claim against the government based on an incident that's now 11 years old? Well, although I believe that he probably – I suppose it's possible that he could bring a claim, considering the government of China being a communist country, I don't believe that it is feasible. Not going to get him very far. There's really no reason for him to go back and stir this back up. Well, to stir it back – I mean, 11 years later, I suppose that would probably be true. But I think the fear of returning to China would be based upon his previous actions and the fact that, as Your Honor said, if he was on some sort of probation where he was required to report and he did not do so, he left the country instead of continuing to do so, that this would be something that he would have a fear of because the government – essentially, he did not – based upon his political actions, he did not continue to – But he didn't put on any evidence so far. Would he have the opportunity to do – if we were to remand on the Song question, would the record be reopened as to any basis for fear at this time, or would he be litigating on the existing record? Because on the existing record, he doesn't have anything there. You're talking about from the petitioner's perspective or from – Yes, from the petitioner's perspective. Well, I believe that if it was remanded based upon a well-founded fear, then I believe there would have to be a further record based upon that particular issue, yes. But he didn't have an obligation to litigate that the first time? No, reading the BIA opinion, they say there was no nexus. That is open to doubt under some now. Then they say in the alternative, there was no past persecution. Right. They don't address, and it may be because it wasn't litigated, whether he could have made out a well-founded fear of future persecution without regard to establishing past persecution. Well, I do believe that the petitioner, in his testimony, that he did state that he did have a fear of returning to China, but I don't believe that that was a very extensive testimony on that particular issue. And the time frame is different now than it was then, too. Probably worse for you. Right, as opposed to when it was actually there, yes. I will reserve my last 20 seconds. Thank you very much. Thank you, Your Honors. Yes, sir. May it please the Court. Nicholas Harling for the Respondent. I'd first like to address the impact of the recent Song decision. Unlike in this case, in Song, the presence of persecution was not in dispute. And for that reason, if this Court affirms the Board's persecution determination, it need not reach the issues of actual or imputed political opinion that were subject to Song. Second. Well, I guess this is what I was trying to get at before. If the BIA, I mean, this is perhaps a little far-fetched, but my understanding is that all that was litigated was whether he demonstrated past persecution, not whether he had a well-thought-out affair of persecution in the future without regard to past persecution. The immigration judge found on both, on page 13 of the immigration judge's decision. What about the BIA, though? Well, the BIA's decision on page 2, when the Board is talking about the issue, the final paragraph on page 2, it's now starting to talk about the basis for why he would have a fear of return, the restriction that he not leave the city when he was actually able to. And the Board cites to page 13 of the immigration judge's decision, and it's on page 13, that the immigration judge is talking about why there's no well-founded fear for the same reason, the ability to, his ability to leave the city despite being told not to do so. So, and I believe that's the way the government's brief was written. But wait a minute. All that he's talking about, ultimately, is that he was unable to show more than a single isolated encounter with the authorities. Are we talking about the Board or the immigration judge? The Board. I'm reading the Board. Okay. Go ahead. So there's, different from Song, there's the issue of persecution. Similar to Song, there's the issue of whether he established an actual or imputed political opinion. On the issue of whether he demonstrated an imputed political opinion, this case is factually distinguishable from Song. In Song, the court found an imputed political opinion for two reasons. It cited the escalation of the petitioner's protest, which we don't have in Zhang's case, and it also cited the disproportionate punishment that Song experienced. And in this case, Zhang did not experience a similar disproportionate punishment. Therefore, it is distinguishable on the issue of imputed political opinion. Now, in Song, the court… But if we were… But for the considerations regarding persecution that you were discussing, we wouldn't decide that. We would send it back to the Board. I mean, it's subtle enough. I don't think it's sort of obvious that it's not applicable. I think it's quite different. The escalation… But the Board decided that, is that he was arrested and detained due to his actions in protesting the taking of his property. However, it's not established that this incident was motivated by actual or imputed public opinion. I mean, there were some statements, as in Song, that could be taken to mean you're anti-government. Sure. In both cases, the petitioners were accused of being anti-government. Right. And so this opinion is based on the theory that if you're protesting taking your property, period, at the end, that's not a nexus. Well, the government argues that… The court in Song didn't just rest on the fact that he was accused of being anti-government. The court also cited the escalation in the protest, as well as the disproportionate punishment. So the government… Absolutely, in this case, the government's strongest point is whether he experienced past persecution. Absolutely. However, the court… The government is not willing to necessarily concede that Song forecloses… Well, that's right. Of course you're not willing to concede that he forecloses. The question is who should decide that, us or the board? Well, normally the government does argue that when an issue hasn't been decided by the board, that the court could remand. And the court can remand on that issue as to whether Song controls. But that's only necessary if this court disagrees with the agency's finding that the petitioner experienced past persecution. That's why it's not worth arguing to us about whether Song complies or doesn't. Are there any questions about the board's persecution determination? The board relied on this court's past case law, GU v. GUO. That allows two parameters, one where there was found past persecution, one where there was not. The court said that, although not identical, clearly this is more similar to GU than GUO, and therefore the government argues that substantial evidence supports that past persecution determination. I don't understand the first thing you said. There were two, sometimes when there was past persecution, sometimes when there was not. What the board did to determine whether the petitioner, the experiences of this petitioner. I see. In other words, they looked at the parameters of the cases and said, where does this fall? Where it actually falls is in the middle, right? Well, I think it falls much closer to GUO, and here's why. It is almost exactly similar to GUO, except in GUO the petitioner was, the alien was detained for three days. In this case, it is seven days. No question that is a difference. However, in GUO, he was detained on two separate occasions, a cumulative of, I think it was 16 days. I mean, it's, in looking at the way these cases come up, if that was persecution, there were two cases that are always cited for not having sufficient showing of persecution. GU and some old case called PROSET, and then we always see those cases, right, from the board. And then the petitioners come in, and they come in with examples on the other side. And I guess it's a standard review question, and maybe you win at that point, but there is something unusual about the notion that if you put somebody in prison for seven days for protesting the government and beat them up, that's not enough to show they were persecuted. Your Honor, this case — Two or twice it is. Your Honor, I would love to cite more published case law from the court other than GUO and PROSET. I just have not been able to find it. And so I have to, I and also the board, has to work with what we can. So the question is whether those are downward limits, in which case this person is over them, or whether they are somehow, you know, suggest some range, but we don't know what the range is. The published case law there — What if it was a two-month detention, but they only beat him once? Your Honor, these are determinations that the agency is forced to make. They do the best that they can with it. I mean, there's also a case law that says, you know, persecution does not encompass all kind of acts that we find unfavorable or abhorrent. That it's an extreme process. It encompasses beatings and detentions. It depends. I mean, in this case, yeah, he was beaten, and that was unfortunate. However, he didn't need medical attention. We have other case law, like in GUO, where he had an electrical baton used on him. He was forced to seek medical attention. That's why the board chose to use that analysis. And the question is not whether this court, if it were deciding the issue in the first instance, would have found otherwise. It's is there compelling evidence against the board's use or reaching the board's determination. In this case, there's not. Okay. If you don't have anything else, that's fine. Thank you. Thank you very much. Obviously, your problem is the persecution problem. So what do you say about that? Very quickly, Your Honors. What exactly is the evidence about? I know he was detained for, what, seven days or something. And then what about the physical attack? Well, in GUO, one of the reasons cited in the GUO case was that he suffered no injuries of any kind. In this case, the petitioner testified that he suffered dizziness, his mouth was bleeding, and he had bruises. And also, a key point in GUO was that GUO was able to return to his government job. In this case, the petitioner's restaurant was demolished, and he was also fined 5,000 RMB. So he had no means of supporting himself afterwards. And we do have some cases that say that that can be taken into account. Economic injury itself isn't persecution, but it can be added to whatever else is happening. Yes, Your Honor, you are correct. And just very quickly on well-founded fear, after I quickly reviewed the record, the petitioner did testify that after he left the country, I believe it was in December of 2007, government officials did come and visit his wife on a few occasions to ask about his whereabouts. And he's been talking to her about every month since then. Correct. But no evidence of any further phone calls. No evidence after those initial few visits. Right. But it makes sense that the police would not continue to visit many years later knowing that he had already absconded. Thank you, Judge. Okay. Thank you very much. And I want to say this was really nice. Some of our immigration arguments are not that useful. Well done on both sides. So thank you. Thank you, Your Honor. All right. Zhang v. Sessions is submitted. We'll go to Azsa Needs v. Sessions.
judges: Berzon, Bybee, Gleason